UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO. 21-CR-260 |
| | : | |
| v. | : | |
| | : | |
| MAXINE MARIE WILLIAMS, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

Between November 2015 and March 2018, defendant Maxine Marie Williams stole 171 checks worth $161,084.23 from her employer, a non-profit organization in Washington, D.C. She was promptly fired when her criminal conduct was uncovered; it included intercepting checks from donors. Williams secured a job with a non-profit trade association five months later. Her prior termination did not deter her from committing additional crimes. She kept stealing, pilfering 33 checks totaling $43,389.93 from the trade association between September 2018 and May 2019. She was fired again, yet continued to engage in criminal conduct, even doing so within days of a U.S. Postal Inspector contacting her in June 2019 to arrange an interview. Williams lied about being out of town; she wrote in an email that she would be gone for a few weeks. Three days after sending that email, however, surveillance video from an ATM in Hyattsville, Maryland, captured her depositing four checks totaling $20,315, which she stole from the non-profit organization, i.e., the employer that originally fired her. The checks had been strategically ripped in a manner that made it impossible to tell what year they had been written. The bank ultimately rejected the deposit.

Given the facts of this case, a sentence of 18 months' incarceration, the top of the guidelines, would certainly be justified. However, the government submits that a sentence of 12 months and one day of imprisonment, the bottom of the guidelines, is sufficient but not greater than necessary to comply with the purposes of sentencing.

**I.     Background**

Between the winter of 2015 and summer of 2019, the defendant deliberately decided to steal from employers over and over and over again. She stole more than 200 checks from two employers. Victim-Organization-One was a non-profit organization that entrusted her to process donation checks and mail checks from the organization to service providers and individuals. Victim-Organization-Two was a non-profit trade association that employed her as an accounts payable coordinator.

The defendant tried to steal approximately $161,000 from Victim-Organization-One, successfully nabbing over $140,000. She intercepted 130 inbound checks, the majority of which were from donors making charitable contributions. She also stole 41 outbound checks before they were mailed to recipients. The overwhelming majority of checks were deposited into her bank account; additional checks totaling approximately $18,000 were deposited into Individual A's bank account. Notwithstanding the defendant's contrary assertions to the presentence investigation report writer, Williams held herself out as being married to Individual A while she was employed at Victim-Organization-One.

Following her termination, the defendant received unemployment benefits for a brief period of time. PSR ¶ 67. In August 2018, the non-profit organization succeeded in convincing an administrative law judge that Williams should be disqualified from receiving unemployment compensation benefits given her gross misconduct, i.e., theft.

After she was fired from Victim-Organization-One and after an administrative law judge disqualified her from receiving unemployment compensation, Williams decided to double down on her criminal conduct. She did so by exploiting Victim-Organization-Two's trust in employing

2

her by stealing approximately $43,000 worth of checks from the non-profit trade association. She was able to successfully net $38,731 in criminal proceeds from those checks. In May 2019, Victim-Organization-Two fired her for stealing. PSR ¶ 65.

Following this second termination, Williams remained committed to stealing and also lied to a federal law enforcement agent in the process. Notably, when a U.S. Postal Inspector attempted to interview her in June 2019, she claimed in an email to the agent that she was out of the area and would not return for several weeks. *See* Exhibit One. Surveillance footage from a bank in Hyattsville, Maryland, proved otherwise. Specifically, the recording showed her depositing four checks totaling just over $20,000 at a drive-up ATM. A screenshot from the video is attached as Exhibit Two. She stole the checks from Victim-Organization-One and attempted to deposit them well over a year after her termination. Each check had been torn to make it impossible to see what year the checks had been written. The bank ultimately rejected the deposit.

In June 2020, the government charged Williams via criminal complaint. She was arrested on August 11, 2020. On April 6, 2021, she pleaded guilty to one count of Interstate Transportation of Stolen Property in violation of 18 U.S.C. § 2314. Her plea agreement allowed her to avoid convictions for Bank Fraud, in violation of 18 U.S.C. § 1344, and Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A.

II.     **Guidelines**

The parties and the presentence report writer agree that the defendant's offense level under the U.S. Sentencing Guidelines ("USSG") is 13. The base offense level for interstate transportation of stolen property is six pursuant to USSG §2B1.1. Because the defendant attempted to steal more than $204,000 from her two employers, the base offense is increased ten levels pursuant to USSG

3

§2B1.1(b)(1)(F). The adjusted offense level of 16 is then decreased by three points because of the defendant's timely acceptance of responsibility pursuant to USSG §3E1.1.

The defendant has no criminal history. Therefore, she is in Criminal History Category I.

Based on a total offense level of 13 and Criminal History Category I, the recommended guideline imprisonment range is 12 months to 18 months. PSR ¶ 81. The recommended fine range is $5,500 to $55,000. PSR ¶ 97.

### III.   The 18 U.S.C. § 3553(a) Factors Support a Sentence of Imprisonment

The Court must impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational treatment. 18 U.S.C. § 3553(a)(2). The Court also must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the sentencing range under the guidelines, any relevant policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to the victims. 18 U.S.C. § 3553(a)(1)-(7).

#### A.   The Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense

The defendant stole from a non-profit organization and a non-profit trade association. Her criminal conduct was extensive. It was not a one-time mistake, a two-time mistake, or even a fifty-time mistake. On the contrary, over the course of three-and-a-half years, she decided to steal checks from her employers more than 200 times, including checks from donors making charitable contributions. There is no reason to believe that she would have stopped stealing from the organizations if her employers had not learned about her fraud. In fact, she continued to try to steal

from Victim-Organization-One well over a year after it fired her, which was particularly notable given that she did so days after being contacted by a federal law enforcement agent.

Stealing from two non-profit entities, especially when the conduct lasted over a period of several years, warrants a stern sentence. A sentence of 12 months and a day would reflect the nature, circumstances, and seriousness of the offense.

    **B.**  **The Need to Promote Respect for the Law and to Deter the Defendant and Others from This Type of Criminal Conduct**

The defendant continued to steal following her termination from Victim-Organization-One. She also continued her criminal conduct after she was fired from Victim-Organization-Two and after a federal law enforcement agent contacted her in an attempt to arrange an interview. Her criminal behavior suggests that a stern sentence is necessary to deter her from engaging in additional criminal conduct. Even if specific deterrence is not an issue for this particular defendant, a sentence of 12 months and one day of imprisonment is warranted for general deterrent purposes and to promote respect for the law.

    **C.**  **The History and Circumstances of the Defendant**

The defendant immigrated to the United States from Belize nearly four decades ago; she became a U.S. citizen in 2007. PSR ¶ 46, 48. She graduated from a Hyattsville, Maryland, high school and ultimately earned her bachelor's degree from the University of the District of Columbia. PSR ¶ 59.

The circumstances that have led her to appear before this Court are perplexing. Her motivation for stealing from not just one non-profit employer, but two is unclear. Her impetus for attempting to defraud Victim-Organization-One out of an additional $20,000 days after a U.S. Postal Inspector reached out to her is bewildering and troubling.

5

Her candidness with the presentence report writer about her marital history also raises questions. The PSR notes that Williams described herself as a "loner" with no "marital history." PSR ¶ 49. Her medical records and employment history tell another story. Her medical records include a notation of being married. PSR ¶ 49. Employment records from Victim-Organization-One also indicate that she was married, at least at one point in time. Specifically, in August 2015, Williams signed a beneficiary form "under the penalties of perjury" that Individual A was her husband. She also listed Individual A as her "spouse" in connection with her health insurance benefits. The investigation also uncovered two photographs where Williams and Individual A are together. Although a defendant's marital status often is not a particularly relevant fact, in this case, some of the checks stolen from Victim-Organization-One ended up being deposited in Individual A's bank account. Williams' assertion to the presentence investigation report writer that she is a loner with no marital history when contradicted with her earlier representations regarding her relationship with Individual A is yet another perplexing aspect of this case.

### D.     Unwarranted Sentencing Disparities

The District of Columbia Circuit has recognized that there will "inevitably . . . [be] sentencing disparities and inequities that can be explained by little more than the identities of the sentencing judges." *United States v. Gardellini*, 545 F.3d 1089, 1096 (D.C. Cir. 2008); *see also United States v. Saez*, 444 F.3d 15, 19 (1st Cir. 2006) ("[W]ith different judges sentencing two defendants quite differently, there is no more reason to think that the first one was right than the second."). The Guidelines "reduce unwarranted federal sentencing disparities," *Freeman v. United States*, 564 U.S. 522, 525 (2011), by "creat[ing] a comprehensive sentencing scheme in which

6

those who commit crimes of similar severity under similar conditions receive similar sentences." *Id.* at 533.

A sentencing court "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities" by "correctly calculat[ing] and carefully review[ing] the Guidelines range." *Gall v. United States*, 552 U.S. 38, 54 (2007). "[I]mposing a within-guidelines sentence is the surest way to avoid unwarranted disparities." *United States v. White*, 737 F.3d 1121, 1145 (7th Cir. 2013). Accordingly, the government believes a sentence of 12 months and a day is appropriate.

### E.     Restitution and Forfeiture

The defendant agreed to the entry of a forfeiture money judgment against her in the amount of $179,500.57. ECF No. 11 at 9. The government respectfully requests that the Court sign the consent order of forfeiture and make the forfeiture part of the judgment.

In addition to forfeiture, the defendant also should be ordered to pay restitution in the amount of $179,500.57. Victim-Organization-One was defrauded out of $140,769.23, but received an insurance payout of $139,532.41 from Travelers Insurance. Victim-Organization-Two was defrauded out of $38,731.34. Pursuant to 18 U.S.C. § 3664(j)(1), restitution should be paid, first on a pro rata basis, to Victim-Organization-One in the amount of $1,236.82 and to Victim-Organization-Two in the amount of $38,731.34; and second, to Travelers Insurance in the amount of $139,532.41. *See United States v. Baldwin*, 389 F. Supp. 2d 1, 4 (D.D.C. 2005) (concluding that in accordance with section 3664(j)(1), "all restitution must be made first to the direct victims of the fraud . . . before restitution can be made" to an insurance company that compensated a victim for its loss).

**CONCLUSION**

The government respectfully requests that the Court sentence the Defendant to twelve months and one day of imprisonment to be followed by three years of supervised release. Such a sentence would be sufficient but not greater than necessary to achieve the purposes of sentencing.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

By:     */s/ Kondi Kleinman*
KONDI KLEINMAN
California Bar. No. 241277
Assistant United States Attorney
Fraud Section
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-6887
Kondi.Kleinman2@usdoj.gov